Chase C. Alvord, OSB #070590
Jason T. Dennett (*pro hac vice* anticipated)
Cecily C. Jordan (*pro hac vice* anticipated)
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Telephone: 206-682-5600
Facsimile: 206-682-2992
calvord@tousley.com
jdennett@tousley.com
cjordan@tousley.com

FRANKLIN D. AZAR (*pro hac vice* forthcoming)
MICHAEL D. MURPHY (*pro hac vice* forthcoming)
TIMOTHY L. FOSTER (*pro hac vice* forthcoming)
BRIAN HANLIN (*pro hac vice* forthcoming)
MARGEAUX R. AZAR (*pro hac vice* forthcoming)
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, Colorado 80014
Phone Number: (303) 757-3300
Fax Number: (720) 213-5131
*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## MEDFORD DIVISION

| | |
|---|---|
| RICHARD BURTON AND JACQUELINE BURTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs(s),<br><br>vs.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY, USAA GENERAL INDEMNITY COMPANY, GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, AND CCC INTELLIGENT SOLUTIONS, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**FOR:**<br><br>(1) BREACH OF CONTRACT<br><br>(2) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING<br><br>(3) DECLARATORY RELIEF<br><br>(4) FRAUDULENT MISREPRESENTATION AND CONCEALMENT<br><br>(5) CIVIL CONSPIRACY TO COMMIT FRAUDULENT MISREPRESENTATION AND CONCEALMENT |

(6) AIDING AND ASSISTING TO COMMIT
FRAUDULENT MISREPRESENTATION
AND CONCEALMENT

**JURY DEMAND**

Plaintiffs Richard Burton and Jacqueline Burton ("Plaintiffs"), on behalf of themselves individually and on behalf of all others similarly situated, bring this action against Defendants United Services Automobile Association ("USAA-Association"), USAA Casualty Insurance Company ("USAA-CIC"), USAA General Indemnity Company ("USAA-GIC"), Garrison Property and Casualty Insurance Company ("Garrison") (collectively, "USAA"), and CCC Intelligent Solutions Inc., d/b/a Auto Injury Solutions ("AIS") (USAA and AIS are hereinafter collectively referred to as "Defendants") to recover monetary damages, injunctive relief, declaratory relief, and other remedies for breach of contract, fraudulent misrepresentation and concealment, civil conspiracy to commit fraudulent misrepresentation and concealment, and aiding and assisting to commit fraudulent misrepresentation and concealment. The following allegations are based upon Plaintiffs' personal knowledge with respect to their own acts and based upon information and belief as to all other matters.

## I.    INTRODUCTION

1.    Plaintiffs bring this class action against Defendants for Defendants' improper scheme designed to systematically, wrongfully, and arbitrarily deny first-party personal injury protection ("PIP") insurance benefits owed to USAA's Oregon insureds under their USAA insurance policies. This action seeks to remedy Defendants' improper and unlawful conduct and enjoin them from continuing to perpetrate this scheme against USAA's Oregon insureds through the improper processing, adjustment, and payment of PIP benefits.

2.    PIP is a first-party benefits coverage for which the insured has paid a separate premium, and which covers the medical payments of the insured if he/she is involved in an automobile accident which causes injury. Under Oregon law, insurers are required to include PIP coverage of at least $15,000 in all Oregon automobile insurance policies. ORS 742.524(1)(a).

3.    Instead of fulfilling its duty to conduct an investigation into each bill for medical expenses submitted by its Oregon insureds, USAA engages in a multifaceted scheme whereby USAA improperly delegates its insurance claims adjustment duties to AIS, who uses its computer program to arbitrarily and improperly reduce or deny PIP claims using its Medical Bill Audit ("MBA") process.

4.    The MBA process is designed, largely through automated computer processes, to categorically and systematically, without human input, eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon its treatment of various codes, including PPO codes, PR codes, GR codes, DOC codes, RF codes, CR codes, and TR codes.

5.    **PPO Codes.** Specifically, in furtherance of their scheme, Defendants, through AIS's MBA process, systematically and without human input reduces the amounts USAA will pay in connection with its insureds' medical bills using improper PPO codes that utilize the allowable lower billing rates under agreements between other insurers and preferred provider organizations ("PPOs") and preferred provider networks ("PPN"),[1] even though USAA has no direct PPO or PPN agreements with its insureds' healthcare providers.

6.    **PR Codes.** Additionally, in furtherance of their scheme, Defendants systematically and without human input deny reimbursement of PIP benefits, using PR codes, on the basis that the medical expenses are not medically reasonable or necessary and/or causally connected to the

---

[1] Unless otherwise specified, PPO and PPN are collectively referred to herein as "PPO."

accident, relying on sham medical review services provided by physicians engaged by AIS pursuant to the MBA process. These sham medical review services are conducted after bogus preset "flags" are triggered pursuant to guidelines programmed into the MBA process including, for example, a gap in treatment by an arbitrarily set number of days, or treatment exceeding an arbitrarily set number, *e.g.*, the 13th chiropractic visit. In denying payment, USAA relies on a letter written by the AIS engaged physician in connection with the sham medical review. The physician conducts only a cursory, hollow review of the provider notes and related documents contained in the AIS database and does not communicate with either the insured or the insured's provider. USAA does not conduct any independent investigation, but instead relies only on the sham physician review in denying reimbursement of the insured's PIP claim.

7.     **GR Codes.** Moreover, in furtherance of their scheme to deny or reduce the payment of PIP benefits, Defendants rely on AIS's MBA automated review process using preset GR 84 "codes" that systematically and without human input deny a PIP claim on the basis that the provider treatment is not causally related to the accident if the provider does not check the box "Auto Accident" on the standard "Health Insurance Claim Form" under the inquiry: "IS PATIENT'S CONDITION RELATED TO:" The USAA adjuster does not conduct any adjustment of the claim and does not investigate whether the treatment was causally related to the accident, but instead denies reimbursement of the PIP claim based only on the MBA automated process.

8.     **DOC Codes.** Also, in furtherance of their scheme, Defendants systematically and without human input deny reimbursement of PIP claims based on DOC codes whereby USAA directs AIS to program its computer to automatically deny payment of medical bills covered under PIP claims if certain documents are not attached to the bills, even though the documentation is not needed to substantiate the necessity of the billed treatments.

9.     **RF Codes.** Additionally, in furtherance of their scheme to deny or reduce the payment of PIP benefits, Defendants systematically and without human input reduce payment for medical provider bills, using RF codes, whenever an automated review process, conducted by AIS pursuant to its contract with USAA, indicates that the charge for a particular procedure exceeds a certain arbitrary threshold established in a database maintained by the actuarial firm Milliman, Inc. (the "Milliman Database"). The Milliman Database is comprised of an outdated 5% nationwide sample of charge data from patients over 65 collected by the U.S. Department of Health and Human Services/Centers for Medicare and Medicaid Services ("Medicare"). This Medicare patient sample has no bearing on the reasonableness of charges for the medical services provided to USAA's insureds, does not reflect the entire range of fees charged in the geographic area where the medical services are provided, and is comprised of data not organized by a provider's years of experience, background, or qualifications. Defendants reduce payment of USAA insureds' medical bills based only on AIS's automated review process and USAA does not conduct any independent or individualized review to assess whether the charge is a reasonable and necessary medical expense.

10.     **CR Codes.** Also, in furtherance of their scheme to deny or reduce the payment of PIP benefits, Defendants deny payment for medical provider bills, using CR codes, whenever an automated review process, conducted by AIS pursuant to its contract with USAA, indicates that the review of the documentation does not support the billing of manual therapy techniques to the same body region provided on the same day as the OMT/CMT services. USAA adopts the AIS recommendation without conducting any adjusting or other review of the PIP claim.

11.     **TR Codes.** Additionally, in furtherance of their scheme to deny or reduce the payment of PIP benefits, Defendants deny payment for medical provider bills, using TR codes,

whenever an automated review process, conducted by AIS pursuant to its contract with USAA, indicates that the level of chiropractic manipulative treatment is not supported by the number of body regions diagnosed and has been adjusted to the appropriate level of service. The USAA adjuster does not conduct any adjustment of the claim and does not investigate whether the treatment was causally related to the accident, but instead denies reimbursement of the PIP claim based only on the MBA automated process.

12.    This action seeks to remedy Defendants' improper and unlawful conduct and enjoin them from continuing to perpetrate their computer-implemented payment scheme to arbitrarily deny or reduce USAA Oregon insureds' PIP claims without conducting any human investigative input or review.

## II.    PARTIES

13.    Plaintiff Richard Burton, a resident of Gold Beach, Oregon, in Curry County, was injured in an automobile accident on March 26, 2018. At the time of this accident, Plaintiff was insured under a USAA-GIC policy that included $25,000 in PIP coverage.

14.    Plaintiff Jacqueline Burton, a resident of Gold Beach, Oregon, in Curry County, was injured in an automobile accident on March 26, 2018. At the time of this accident, Plaintiff was insured under a USAA-GIC policy that included $25,000 in PIP coverage.

15.    At all times material hereto, Defendant USAA-Association was, and still is, a reciprocal interinsurance exchange licensed to do business in the State of Oregon. USAA-Association has sold and/or underwritten thousands of automobile insurance policies to Oregon residents that provided PIP coverage requiring the payment of all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident. PIP policies at issue in this case were issued by USAA-Association to Oregon residents.

CLASS ACTION COMPLAINT            - 6 -

16.     At all times material hereto, Defendant USAA-CIC was, and still is, a corporation organized under the laws of Texas with a principal place of business in Texas. USAA-CIC has sold and/or underwritten thousands of automobile insurance policies to Oregon residents that provided PIP coverage requiring the payment of all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident. USAA-CIC is a wholly-owned subsidiary of USAA-Association. PIP policies at issue in this case were issued by USAA-CIC to Oregon residents.

17.     At all times material hereto, Defendant USAA-GIC was and is a corporation organized under the laws of Texas with a principal place of business in Texas. USAA-GIC has sold and/or underwritten automobile insurance policies in Oregon, and throughout the United States, that provided PIP coverage requiring the payment of all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident. USAA-GIC is a wholly-owned subsidiary of USAA. PIP policies at issue in this case, including Plaintiffs' policies, were issued by USAA-GIC to Oregon residents.

18.     At all times material hereto, Defendant Garrison was and is a corporation organized under the laws of Texas with a principal place of business in Texas. Garrison has sold and/or underwritten automobile insurance policies in Oregon, and throughout the United States, that provided PIP coverage requiring the payment of all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident. Garrison is a wholly-owned subsidiary of USAA-Association. PIP policies at issue in this case were issued by Garrison to Oregon residents.

19.     At all times material hereto, Defendant CCC Intelligent Solutions, Inc. was and is a Delaware corporation with a principal place of business in Illinois. CCC Intelligent Solutions, Inc. is doing business as Auto Injury Solutions.

20.     USAA-Association, USAA-GIC, USAA-CIC, and Garrison hold themselves out and identify themselves in Oregon as USAA. USAA-Association, the parent company, exercises total domination over, and directs and unduly controls, USAA-CIC, USAA-GIC, and Garrison; and exercises total domination over, and directs and unduly controls, all actions of USAA-CIC, USAA-GIC, and Garrison, including all actions relating to the improper processing, adjustment, and payment of PIP benefits.

21.     USAA commingle funds, file joint tax returns, share principal office addresses, and share registered agents and officers.[2]

22.     USAA-Association negotiated and entered the contract with AIS on behalf of itself, as well as on behalf of USAA-CIC, USAA-GIC, and Garrison.[3]

23.     USAA-Association has totally dominated and unduly controlled USAA-CIC, USAA-GIC, and Garrison to such an extent that USAA-CIC's, USAA-GIC's, and Garrison's independent existences were in fact non-existent and they were in fact the alter ego USAA-Association, and USAA-CIC, USAA-GIC, and Garrison are instrumentalities of USAA-Association.

---

[2] *See* USAA-Association, USAA-CIC, USAA-GIC, and Garrison filings, showing that USAA file joint tax returns and share principal office addresses, and showing that USAA-CIC, USAA-GIC, and Garrison have the same officers and directors or trustees.

[3] Declaration of Joley Day-Mayfield in Support of Defendants' Opposition to Plaintiff's Motion to Remand, filed in *Peoples v. United States Automobile Association, et al*., United States District Court Western District of Washington, No. 2:18-cv-01173-RSL (ECF 15), pg. 3, ¶ 8 (Joley Day-Mayfield, USAA-Association's Director Claims Policy, states under oath that AIS is USAA-Association's "third-party vendor," carefully referring to USAA-Association as the party with vendor relationship with AIS, rather than "Defendants," where "Defendants" is collectively referring to USAA-Association and USAA-CIC).

24.    The corporate forms of USAA-CIC, USAA-GIC, and Garrison were used for an improper purpose to allow USAA to engage in an improper scheme designed to systematically, wrongfully, and arbitrarily deny Plaintiffs first-party PIP insurance benefits owed under their USAA insurance policies. USAA was able to engage in this improper scheme through the contract and unlawful arrangement between USAA-Association and AIS through which Defendants improperly denied or reduced PIP claims.

25.    The improper use of the USAA corporate forms caused injury to Plaintiffs and all Class Members allowing Defendants to systematically, wrongfully, and arbitrarily deny them first-party PIP insurance benefits owed under their USAA insurance policies.

### III.    JURISDICTION

26.    This Court has subject matter jurisdiction over USAA and AIS pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which there is diversity of citizenship between at least one plaintiff class member and one defendant; the putative Class exceeds one hundred members; and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

27.    During the time period at issue, USAA and AIS transacted, and continues to transact, substantial business within Curry County.

28.    The Court has personal jurisdiction over AIS because this suit arises out of and relates to AIS's contacts with the forum. AIS's suit-related conduct created a substantial connection with the state of Oregon. AIS is essentially adjusting Plaintiffs' and the PIP claims for USAA's Oregon insureds, who make up the putative class. AIS directly communicates with Plaintiffs and the putative class members. AIS requires these Oregon insureds to send their medical information and documents to AIS. AIS makes recommendations for reductions and denials of

reimbursement of their PIP claims using AIS's computerized MBA system and the associated flags and codes. USAA's adjusters simply follow AIS's bogus recommendations without adjusting these claims.

29.     AIS sends Explanation of Reimbursement ("EOR") to USAA's Oregon insureds identifying these reductions and denials of their PIP claims and the codes associated with these unlawful reductions and denials. AIS further explains to USAA's insureds that if they desire to appeal the decisions set forth in the EORs sent by AIS to the insureds, they must appeal the decision to AIS. USAA's adjusters conduct no real or legitimate adjusting of these PIP claims.

30.     AIS has purposely directed its activities at the state of Oregon by committing the foregoing intentional acts which were expressly aimed at the state of Oregon and which caused harm in Oregon—harm which AIS knew would be suffered in the state of Oregon. There is a causal connection between AIS's contacts with the state of Oregon and Plaintiffs' claims. AIS cannot show that the exercise of jurisdiction would be unreasonable.

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. USAA and AIS regularly conduct business in this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

IV.     **FACTUAL ALLEGATIONS**

A.  **USAA's Contractual Provisions Pertaining to PIP Services, and Oregon Regulatory Requirements Pertaining to the Provision of Such Services.**

32.     USAA specifically targets and markets its insurance products to military service members and their families. USAA represents that it is committed to taking care of and supporting military service members and their families, touting that "[w]hen you join USAA, you become part of a family who stands by you during every stage of your life."

33.    USAA offered and sold PIP coverage to Oregon consumers, including Plaintiffs and the putative class.

34.    Pursuant to its insurance policies with Plaintiffs and the putative class members, USAA must pay all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident.

35.    Pursuant to its insurance policies, USAA was required to pay its Oregon covered PIP benefits as follows:

   a.    "[t]he amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement"; or

   b.    "[t]he amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area"; or

   c.    "[t]he amount negotiated with the provider; or"

   d.    the lesser of "[t]he actual amount billed" or "[a] reasonable fee for the service provided."

36.    USAA does not have a direct agreement with a PPO, PPN or similar organization, and there is no amount required, approved, or allowed by a fee schedule established by the State of Oregon, the federal government, or other governmental entity in the relevant geographic area. Thus, under its agreements with its Oregon insureds, USAA must pay the lesser of either the actual billed amount or a reasonable fee for the medical services provided.

37.    USAA made a fraudulent or reckless representation of facts as true (*e.g.* that USAA would pay in accordance with its PIP policies), when Defendants knew they had a fraudulent cost containment scheme in place, *viz.*, the AIS MBA System, that was designed to enrich Defendants

to the detriment of USAA insureds. Defendants intended to deceive Plaintiffs and the putative class, and they also made such representations knowingly.

38.    Moreover, USAA and AIS conspired to conceal from USAA insureds that they would rely on AIS's MBA process to arbitrarily and unlawfully reduce and deny USAA insureds' PIP claims using sham codes.  USAA and AIS conspired to conceal from USAA insureds that they would subject USAA insureds' PIP claims to AIS's MBA process's algorithms intentionally designed to deny and reduce claim reimbursement. Moreover, USAA and AIS conspired to conceal from USAA insureds that they would use arbitrary benchmarks to determine what costs for medical care were "reasonable."

39.    From at least May 9, 2018, to the present, thousands of USAA Oregon insureds submitted reasonable medical expense bills for payment under PIP coverage contained in policies purchased from USAA, and they will continue to do so.

40.    Under the terms of USAA's PIP coverage, USAA assumed the obligation to conduct an investigation into each bill for medical expenses submitted, to make coverage decisions based on readily available information, and to pay all reasonable and necessary medical expenses incurred for the treatment of injuries sustained in a covered occurrence.

41.    In sum, instead of conducting an investigation into each bill for medical expenses submitted, USAA has arbitrarily denied or reduced PIP claims submitted by its Oregon insureds by improperly delegating its insurance claims adjustment duties to AIS who, through its computerized MBA process, arbitrarily and improperly reduces or denies PIP claims.

**B. USAA's Agreement in Furtherance of its Conspiracy with AIS to Reduce and Deny PIP Claims Using AIS's MBA Process Without Adjuster Involvement.**

42.     In furtherance of the conspiracy and scheme to deny or reduce the payment of PIP benefits, USAA, through its parent company, USAA-Association, contracts with AIS to use AIS's MBA process to reduce or deny reimbursement of PIP benefits.

43.     AIS is not an insurance company. Nevertheless, USAA uses AIS's MBA process and automated, third-party bill-reviewing services to eliminate the need for the USAA insurer's adjuster or claims representative to undertake any individual human investigation and evaluation of USAA's insureds' PIP claims. USAA's use of AIS ensures improper and arbitrary uniform practices for denying or reducing these claims.

44.     Upon information and belief, AIS is incentivized to universally and arbitrarily reduce or deny medical payment reimbursements, using its automated computer system and bogus physician letters.

45.     USAA improperly delegates its obligation to evaluate and adjust claims to AIS, including determining whether medical expenses are medically necessary and reasonable and causally connected to the accident, and whether provider fees are reasonable.

46.     When insureds submit PIP claims to USAA, Defendants instruct these insureds and their healthcare providers to send the supporting medical records and bills, including any appeals, to AIS, not USAA.

47.     Upon receipt of claim information from a USAA insured, AIS conducts the MBA process. The MBA process is designed, largely through automated computer processes, to categorically eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon, among other things, coding errors, sham medical necessity reviews, and non-existent PPO contracts and confidential statistical information, rather than through reviewing

CLASS ACTION COMPLAINT                  - 13 -

the individual character of health care services required by an insured, their related expenses, or their treatment provider.

48.     After AIS's MBA process reduces or denies reimbursement for PIP claims, AIS generates and sends to USAA's insureds an EOR explaining, *inter alia*, the charge for medical treatment by the provider by service date, the amount by which USAA denies or reduces the charge for medical treatment, the reimbursement amount, and the explanation for any reduction or denial.

49.     Defendants expressly and/or implicitly have agreed to keep secret, and not to disclose to USAA insureds, the exact manner in which the MBA process arbitrarily and unlawfully denies and reduces PIP claims; thus even if a USAA insured knew that the MBA system was used to evaluate their PIP claims, they could never verify the accuracy or the fairness of the evaluation.

50.     Defendants have conspired to withhold and conceal from USAA's insureds the nature of AIS's MBA process and the means by which AIS processes and evaluates PIP claims to systematically reduce and deny them.

51.     Defendants uniformly and consistently executed, applied, managed and enforced the MBA process.

### C. Using AIS's MBA Process, Defendants Improperly Reduce PIP Payments, Using PPO Codes, Based on Non-Existent Direct Agreements with PPOs.

52.     AIS programs its computer MBA System to automatically and arbitrarily deny, through the use of "PPO" codes, full payment of providers' bills covered by PIP, and to instead pay a lower rate based upon allowable billing rates under undisclosed PPOs between other insurers and PPOs. Defendants then reduce reimbursement to USAA insureds even though USAA has no direct PPO agreements with its insureds' healthcare providers or the PPOs.

53.     When a PPO code is listed as the reason for a reduction in reimbursement, USAA, through AIS, falsely explains in the EOR that the reduction is because "[t]his service provider

participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient."

54.     In reality, USAA has no direct agreements with PPOs, and providers have not agreed with USAA that they will not seek additional payment from insureds.

55.     USAA applies these reduced PIP reimbursements based on fictitious PPO agreements and without investigating the reasonableness of the charged amount.

56.     As a result of Defendants' improper reduction of PIP reimbursements based on non-existent direct agreements with PPOs, insureds, among other things, are balance-billed by their healthcare providers, become the subject of collection actions by the providers seeking payment of the amounts that USAA refuses to pay, and/or remain under the threat of such actions.

### D. Using AIS's MBA Process, Defendants Improperly Deny PIP Payments, Using DOC Codes, Based on Requests for Irrelevant Additional Documentation, and Without USAA Conducting Any Independent Review.

57.     USAA directs AIS to program its computer to automatically review each bill by line item and to flag and deny payment of medical bills covered under PIP if certain documents are not attached to the bills. Even if the provider submits documents substantiating the need for treatment or its relationship to the auto accident, the computer automatically denies payment of the bill if USAA's preset documentation requirement is not met.

58.     Instead of paying the claim, a "DOC" reason code is identified in the EOR sent by AIS to the insured and AIS makes a request to the insured or provider to submit the additional unnecessary documentation.

59.     Such AIS automatic computer-generated denials are made without USAA adjusters conducting any investigation as to whether the documentation was needed to substantiate the necessity of the billed treatment.

CLASS ACTION COMPLAINT                    - 15 -

60. On information and belief, many DOC code denials and document request letters are sent to USAA insureds by AIS with no USAA adjuster involvement.

**E. Using AIS's MBA Process, Defendants Improperly Deny PIP Payments, Using PR Codes, on the Basis that the Medical Expenses Are Not Medically Necessary and Reasonable and/or Causally Related to the Accident, Relying on Sham Reviews by Physicians Engaged by AIS, and Without USAA Conducting an Independent Review.**

61. Defendants deny reimbursement of PIP claims amounts, using PR codes, on the basis that the medical expenses are not reasonably medically necessary and/or causally related to the accident, relying on sham medical review services provided by physicians engaged by AIS pursuant to the MBA process. These sham medical review services are conducted after bogus and arbitrary preset "flags" are triggered pursuant to guidelines programmed into the MBA process including, for example, a gap in treatment by an arbitrarily set number of days, or treatment exceeding an arbitrarily set number, *e.g.*, the 13th chiropractic visit.

62. More specifically, the preset flags generate a bogus review by a nurse employed by AIS to purportedly determine whether medical expenses are medically necessary and reasonable and/or causally related to the accident. After the billing is routed to the physician engaged by AIS, the physician conducts a sham medical review to determine whether the medical expenses are medically necessary and reasonable and causally related to the accident and recommends that reimbursement be denied after only a cursory and hollow review of the insured's medical records. AIS then generates a bogus records review report created by the physician to substantiate its improper denials of payments for medically necessary treatment.

63. AIS generates these sham records review reports without the AIS engaged physician conducting a physical examination of the insured, without communicating with the insured or treating provider, and without basis in fact obtained from a reasonable investigation.

AIS then prepares an EOR which denies reimbursement based on the sham physician review and records review report.

64.    Defendants deny reimbursement of the provider's charge and the EOR is sent by AIS to the insured based solely on the bogus records review report without USAA conducting any independent evaluation of the claims, and without any direct communication between AIS and USAA, and without any direct communication between USAA and the insured's provider.

65.    On information and belief, AIS pays its reviewers per records review report generated, which payment scheme improperly incentivizes the reviewers to generate records review reports hurriedly and without conducting a reasonable investigation into the medical necessity and reasonableness of the treatment provided to insureds.

66.    On information and belief, sham records review reports are frequently completed by physicians within minutes.

67.    On information and belief, manager approval is required for an adjuster to override an AIS assigned PR code, and USAA discourages adjusters to seek such approval such that it rarely, if ever, occurs.

68.    On information and belief, AIS is solely responsible for all appeal processes related to PR code denials. AIS requires USAA's insureds or their healthcare providers to submit appeals directly to AIS. AIS processes these appeals without any adjuster involvement, and issues the new EOR setting forth its decision.

69.    On information and belief, USAA adjusters do not engage in any legitimate or real investigative activities or other adjusting functions concerning AIS PR code denials.

70.    AIS prepares and mails directly to USAA insureds the EORs containing PR codes and the records review reports prepared by physicians engaged by AIS. All paper correspondences

with USAA insureds go directly through AIS. The EORs inform USAA insureds of the amount that will be reimbursed under their PIP policies. The provision of this information to insureds is typically in the purview of a licensed adjuster; thus, a reasonable person would assume that AIS is adjusting their PIP claims. However, AIS is not a licensed adjuster. AIS is improperly engaging in the adjustment of USAA's insureds' PIP claims without a license and improperly and arbitrarily reducing and denying these claims with USAA's approval and consent so as to financially benefit USAA and AIS to the detriment of USAA's insureds.

71.     In short, USAA improperly delegates to AIS its obligations to conduct a reasonable and fair investigation, evaluation, and adjustment of insureds' claims. Defendants then deny reimbursement of its insureds' PIP claims using AIS's MBA process and bogus physician reviews.

### F. Using AIS's MBA Process, Defendants Improperly Deny PIP Payments, Using GR Codes, on the Basis that the Medical Expenses are Not Causally Related to the Accident, and Without USAA Conducting Independent Review.

72.     Defendants deny reimbursement of PIP claims amounts, using GR codes, *viz*., GR84, and advising the insured that the "Box 10, question B of the CMS1500 form indicates the medical treatment rendered is not related to an auto accident. Should this be an error, submit a corrected bill and include medical records for verification for the dates of service billed. Otherwise, services not related to an auto accident are not reimbursable."

73.     Before denying payment through AIS's MBA Process and GR code, USAA's adjusters do not investigate whether the medical treatment rendered is related to an auto accident. Instead, USAA simply rubber stamps the AIS determination and denies reimbursement.

**G. Using AIS's MBA Process, Defendants Improperly Reduce PIP Payments, Using Reasonable Fee, or RF Codes,  that Rely on Unsupported and Arbitrary Bill Thresholds, and Without USAA Conducting an Independent Review.**

74.     In  furtherance  of  their  scheme  to  deny  or  reduce  the  payment  of  PIP  benefits, Defendants rely on AIS's automated review process to use preset "reasonable fee" or "RF" codes, as directed by USAA. Specifically, Defendants refuse to pay medical provider bills whenever an automated review process, conducted by AIS pursuant to the MBA System, indicates that the charge for a particular procedure exceeds a certain arbitrary threshold established in the Milliman Database. If the provider's fee for a specific CPT code is more than $9.99 above the Milliman 80th percentile amount for the same CPT procedure, the computer automatically denies the payment and sets the reimbursement amount at the 80th percentile amount. The computer then creates an EOR form which AIS sends to the USAA insured identifying the reason for the reduced payments as  an  "RF,"  *viz.,*  "Reasonable  Fee,"  reason  code,  and  advising  the  insured  that  "[t]he  charge exceeded  a  reasonable  amount  for  the  service  provided."  Defendants  do  not  conduct  any independent or individualized review to assess whether the charge is a reasonable and necessary medical expense.

75.     The Milliman Database used by Defendants to arbitrarily and improperly reduce the  payment of PIP benefits is comprised of an outdated 5% nationwide sample of charge data from patients over 65 collected by Medicare, has no bearing on the reasonableness of charges for the medical services provided by USAA's insureds, does not reflect the entire range of fees charged in  a  geographic  area  where  the  medical  services  are  provided,  and  is  comprised  of  data  not organized by a provider's years of experience, background, or qualifications and credentials, including board certification. Nor does the Milliman Database take into consideration the severity of the accident, the patient's age, or pre-existing conditions.

CLASS ACTION COMPLAINT              - 19 -

76.     AIS accesses and applies the Milliman Database in adjusting USAA's insureds' PIP claims, assigns RF codes on medical bills through the MBA Process, and thereby arbitrarily and improperly reduces USAA's insureds' PIP claims.

77.     Before Defendants deny payment through AIS's MBA Process and RF code, USAA's adjusters do not investigate the provider's charges or determine "the reasonable fee" for that provider's services. AIS's computer drafts the EOR relying exclusively on the 80th percentile of the Milliman Database. AIS does not communicate with the patient, insured or treating provider. And AIS makes these computer generated determinations and calculations without knowledge of the insured's health treatment plan in place. Instead, USAA simply rubber stamps the AIS calculation, and sends the provider a reduced check; and AIS sends the insured the deceptive EOR stating that the denial or reduction is based on an "RF Reason Code," and falsely asserting that the amount billed "exceeds a reasonable amount for the service provided."

78.     When Defendants reduce payments based on an RF code they are making no determination that the amount billed is in fact "unreasonable." Instead, USAA's choice of the 80th percentile of billed charges for each procedure in each Medicare defined geographic area is arbitrary.

79.     On information and belief, USAA adjusters do not override the RF codes assigned by AIS through its MBA system, and they have no basis to legitimately determine what the "reasonable amount" is for medical bills.

80.     As a result of Defendants' improper reduction of PIP reimbursements based on RF codes, insureds, among other things, are balance-billed by their healthcare providers, become the subject of collection actions by the providers seeking payment of the amounts that USAA refuses to pay, and/or remain under the threat of such actions.

81.     On information and belief, Defendants are aware that USAA insureds are balance billed as a result of RF and PPO codes, but continue to reduce bills using these codes. Moreover, USAA improperly considers balance billing a "disputed amount" even though the amount is not actually in dispute, and even though the unpaid amount becomes a debt owed by its insureds who could face collection action and harm to their credit for any unpaid amounts.

### H.  USAA Entered into a Stipulation and Consent Order with the State of Vermont Agreeing to, *Inter Alia*, Discontinue Its Use of Physician Review Letters and its Use of RF Codes to Reduce PIP Claims without Adjuster Involvement.

82.     USAA's use of RF codes to determine what constitutes a "reasonable fee" and only paying that amount and its use of medical reviews by AIS engaged physicians to deny PIP claims was one of the subjects of the market conduct examination ("MCE") conducted by the Insurance Division of the Vermont Department of Financial Regulation ("Department") resulting in the entry of a Stipulation and Consent Order on May 18, 2018, in *In the Matter of: United Services Automobile Association (USAA) (NAIC #25941); USAA Casualty Insurance Company, (NAIC #25968); USAA General Indemnity Company (NAIC #18600); Garrison Property and Casualty Insurance Company (NAIC #21253)*, Docket No. 17-010-I ("Vermont Consent Order").

83.     In the Vermont Consent Order, the Department found that USAA engaged in unfair and deceptive acts and practices by, *inter alia,* "accepting the initial payment recommendations made by its third-party vendor [AIS] with a lack of documentation describing adjusting activities by the adjuster," "potentially creating balance billing problems for the claimant by reducing the amount of an auto medical bill by determining what constitutes a 'reasonable fee' and only paying that amount," "[a]ccepting the third-party vendor's [AIS] determination regarding medical necessity without questioning the claimant or the provider;" and "[d]enying coverage without conducting a reasonable investigation." Examples include: "a. Accepting the third-party vendor's

determination regarding medical necessity without questioning the claimant or the provider; and b. Denying coverage without conducting a reasonable investigation." Vermont Consent Order at 2-3.

84.    In the Vermont Consent Order, USAA, among other things, agreed that it "no longer review claims for medical necessity and have discontinued the use of physician review letters." *Id.* at 5-6.

85.    Additionally, USAA agreed to "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," including "guidelines and training material which emphasize the requirement to conduct a reasonable investigation prior to making a determination." *Id.*, ¶ 22.

86.    USAA also agreed to properly document all USAA claims files so each file clearly shows the inception, handling, and disposition of the claim, and to document the steps taken so that an examiner can review the file and it is clear what steps the adjuster took and how the steps support the ultimate determination." *Id.*, ¶ 23.

87.    USAA acknowledged "that [the Vermont Consent Order] constitutes a finding by the Commissioner that [USAA has] violated the provisions of Vermont law set forth above and agree not to contest such findings." *Id.*, ¶ 18.

## I.    After the Vermont Consent Order, USAA Improperly Continues to Use AIS to Adjust USAA Claims Nationwide, Including in Oregon.

88.    On information and belief, AIS, pursuant to its contract with USAA-Association, and on behalf of USAA, uses its systems designed to systematically, wrongfully, and arbitrarily deny USAA's insureds' PIP benefits owed under their USAA insurance policies nationwide, with the possible exception of Vermont (in view of the Vermont Consent Order).

89.     Although USAA, under the Vermont Consent Order, agreed to cease engaging in these practices in Vermont, it nevertheless continues to engage in these practices in other states, including Oregon, and will continue to engage in these practices unless ordered to cease engaging in such conduct.

90.     AIS's corporate designee has described AIS's "standard workflow diagram," which is the process employed by AIS nationwide on behalf of USAA when generating an EOR, as evidenced in a brief published in Westlaw:

> Q. I really don't want to rehash this, but you were talking about how medical bills come in and they are processed and then you talked about indexing. You kept talking about all these steps about how a claim eventually results in an EOR, right?
>
> A. [Tina Senftle – AIS's corporate designee]. Yes.
>
> Q. What would you describe that process?
>
> A. **That's a workflow diagram.**
>
> Q. Workflow diagram. Is there a workflow diagram that shows how USAA's PIP claims are processed by the AIS software?
>
> A. Specific to Montana?
>
> Q. Yes.
>
> A. No.
>
> Q. The next question is going to be, is there one that is more general to the United States as a whole?
>
> A. I mean, there is a diagram that shows the workflow, yes.
>
> Q. What is that document called, "workflow diagram"?
>
> A. I don't know that it has a name, but yeah.
>
> Q. The diagram that you reference, does the workflow diagram apply to claims processed in Montana?
>
> A. **It would be a standard workflow.**[4]

_____

[4] Reply Brief in Support of Plaintiffs' Third Motion to Compel, *Byorth v. USAA Cas. Ins. Co.*, No. 20CV00076, 2019 WL 9851641, at *5-6 (D. Mont. Mar. 8, 2019) (emphasis in original).

CLASS ACTION COMPLAINT                - 23 -

91.    USAA knows that its computer-based billing scheme is harming its insureds—
mostly consisting of U.S. military veterans and their families—both financially and physically.
Yet USAA will not cease engaging in its billing scheme until ordered to do so on a state-by-state
basis as evidenced by the fact that USAA continues to engage in its billing scheme even after it,
and its affiliated companies, entered into the Vermont Consent Order.

92.    In a Rule 30(b)(6) deposition addressing, *inter alia*, the Vermont Consent Order
and USAA's conduct thereafter, "…USAA testified generally that even though Montana's UTPA
is essentially the same as Vermont's, it gave no consideration to changing its business practices in
Montana in a similar fashion" after the Vermont Consent Order.[5] There, the plaintiff's expert Dave
Bauer, opined that "given my 20 years as in-house counsel for a major insurance company, I find
it suspect that USAA upper management has not discussed the Vermont Order in detail and
whether it should review its practices in Montana and all other states where it does business."[6]

**J.    USAA-GIC, through AIS's MBA Process, Unlawfully Denied or Reduced
Reimbursement for Plaintiff Richard Burton's PIP Claims.**

93.    Plaintiff Richard Burton was injured in an automobile accident on March 26, 2018,
while insured by USAA-GIC. Plaintiff Richard Burton had $25,000 in PIP coverage through
USAA-GIC.

94.    Plaintiff Richard Burton sought and received medical treatment for injuries he
suffered in the accident. The medical treatment Plaintiff Richard Burton received was causally
related to his injuries and was reasonable and necessary.

---

[5] Brief in Opposition to USAA's Motion in Limine to Exclude Vermont Stipulation and Consent Order, *McKean v. USAA Cas. Ins. Co.*, No. 20-76-BLG-KLD, 2020 WL 4783602 (D. Mont. July 27, 2020).

[6] *Id.*

CLASS ACTION COMPLAINT            - 24 -

95.     Plaintiff Richard Burton submitted a total of $25,726.50 in PIP claims for the medical treatment he received in connection with the injuries he suffered in the accident. USAA-GIC only paid $2,121.55 toward these PIP claims, denying payment or reducing payment in the amount of $23,604.95, based on PPO codes, PR codes and CR codes.[7]

96.     More specifically, USAA-GIC reduced Plaintiff Richard Burton's PIP claims by PPO codes as set forth in USAA-GIC's EORs dated; April 25, 2018; April 28, 2018; May 21, 2018; July 5, 2018; August 16, 2018; August 21, 2018; August 24, 2018; September 4, 2018; and November 6, 2018.

97.     The providers whose medical bills were reduced by the PPO code reductions did not have direct agreements with the PPOs.

98.     USAA-GIC reduced the medical bills by the PPO codes generated through AIS's MBA process, and USAA-GIC's adjusters performed no adjusting or other review of these claims which were reduced by the PPO codes.

99.     USAA-GIC also denied Plaintiff Richard Burton's PIP claims by PR codes as set forth in USAA-GIC's EORs dated March 29, 2019; April 24, 2018; April 25, 2018; July 5, 2018; and August 16, 2018. The EORs advised Plaintiff Richard Burton to see the attached physician letter purportedly setting forth the basis as to why treatment was not medically necessary and/or related to the loss.

100.    The physician review letters were bogus and prepared without the physician conducting any real review and without communicating with either Plaintiff Richard Burton or the medical providers who provided treatment to Plaintiff Richard Burton.

---

[7] USAA-GIC had also initially denied a number of claims based on DOC codes, but thereafter made adjustments whereby USAA-GIC paid a portion of the claim, reducing the payment by a PPO code.

101.    The USAA-GIC adjuster adopted the AIS engaged physician recommendation without conducting any adjusting or other review of Plaintiff Richard Burton's PIP claims based on PR codes and the bogus physician review letters.

102.    USAA-GIC further denied Plaintiff Richard Burton's PIP claims by CR 218 codes as set forth in USAA-GIC's EORs dated April 28, 2018; May 21, 2018; August 21, 2018; and September 4, 2018. The EORs attached respective letters from a certified Professional coder at AIS purportedly to show that the review of the documentation does not support the billing of manual therapy techniques to the same body region provided on the same day as the OMT/CMT services.

103.    USAA-GIC adopted the AIS recommendation without conducting any adjusting or other review of Plaintiff Richard Burton's PIP claims which USAA-GIC reduced based on CR 218 codes.

**K.  USAA-GIC, through AIS's MBA Process, Unlawfully Denied Reimbursement for Plaintiff Jacqueline Burton's PIP Claims.**

104.    Plaintiff Jacqueline Burton was injured in an automobile accident on March 26, 2018, while insured by USAA-GIC. Plaintiff Jacqueline Burton had $25,000 in PIP coverage through USAA-GIC.

105.    Plaintiff Jacqueline Burton sought and received medical treatment for injuries she suffered in the accident. The medical treatment Plaintiff Jacqueline Burton received was causally related to her injuries and was reasonable and necessary.

106.    Plaintiff Jacqueline Burton submitted a total of $31,959.20 in PIP claims for the medical treatment she received in connection with the injuries she suffered in the accident. USAA-

CLASS ACTION COMPLAINT          - 26 -

GIC denied or reduced payment in the amount of $25,287.93, based on PPO codes, PR codes, CR codes, TR codes and GR codes.[8]

107.    More specifically, USAA-GIC reduced Plaintiff Jacqueline Burton's PIP claims by PPO codes as set forth in USAA-GIC's EORs dated April 6, 2018; April 24, 2018; April 25, 2018; May 21, 2018; May 29, 2018; August 21, 2018; March 13, 2019; and March 21, 2019.

108.    The providers whose medical bills were reduced by the PPO code reductions did not have direct agreements with the PPOs.

109.    USAA-GIC reduced the medical bills by the PPO codes generated through AIS's MBA process, and USAA-GIC's adjusters performed no adjusting or other review of these claims which were reduced by the PPO codes.

110.    USAA-GIC also denied Plaintiff Jacqueline Burton's PIP claims by PR codes as set forth in USAA-GIC's EORs dated April 25, 2018; July 5, 2018; July 31, 2018; August 9, 2018; August 24, 2018; and October 5, 2018.  The EORs advised Plaintiff Jacqueline Burton to see the attached physician letter purportedly setting forth the basis as to why treatment was not medically necessary and/or related to the loss.

111.    The physician review letters were bogus and prepared without the physician conducting any real review and without communicating with either Plaintiff Jacqueline Burton or the medical providers who provided treatment to Plaintiff Jacqueline Burton.

112.    The USAA-GIC adjuster adopted the AIS engaged physician recommendation without conducting any adjusting or other review of Plaintiff Jacqueline Burton's PIP claims based on PR codes and the bogus physician review letters.

---

[8] USAA-GIC had also initially denied a number of claims based on DOC codes, but thereafter made adjustments whereby USAA-GIC paid a portion of the claim, reducing the payment by a PPO code.

113.    USAA-GIC further denied Plaintiff Jacqueline Burton's PIP claims by CR 218 codes as set forth in USAA-GIC's EORs dated April 25, 2018; May 21, 2018; May 29, 2018. The EORs attached respective letters from a certified Professional coder at AIS purportedly to show that the review of the documentation does not support the billing of manual therapy techniques to the same body region provided on the same day as the OMT/CMT services.

114.    USAA-GIC adopted the AIS recommendation without conducting any adjusting or other review of Plaintiff Jacqueline Burton's PIP claims which USAA-GIC reduced based on CR 218 codes.

115.    USAA-GIC also denied Plaintiff Jacqueline Burton's PIP claims by TR 103 code as set forth in USAA-GIC's EORs dated April 25, 2018. The EOR provided that the level of chiropractic manipulative treatment is not supported by the number of body regions diagnosed and has been adjusted to the appropriate level of service.

116.    USAA-GIC adopted the AIS recommendation without conducting any adjusting or other review of Plaintiff Jacqueline Burton's PIP claims which USAA-GIC reduced based on TR 103 code.

117.    USAA-GIC denied Plaintiff Jacqueline Burton's PIP claims by GR 84 code as set forth in USAA-GIC's EOR dated May 14, 2018. In its EOR provided to Plaintiff Jacqueline Burton, USAA-GIC, through AIS, denied reimbursement for this medical care on the basis of GR 84 ("Box 10, question B of the CMS1500 form indicates the medical treatment rendered is not related to an auto accident….").

118.    Although USAA-GIC, through AIS's MBA process, denied reimbursement of Plaintiff Jacqueline Burton's PIP claims based on a GR 84 code and that the medical treatment rendered was not related to an auto accident, USAA-GIC did not conduct an individual adjustment

of the claim or review of the medical treatment Plaintiff Jacqueline Burton received. And no physician reviewed Plaintiff Jacqueline Burton's records, spoke with her, or conducted a physical evaluation of her, or spoke with any of her providers.

## V.    CLASS ALLEGATIONS

119.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

120.    The proposed class consists of:

All persons (1) who were insured under the PIP coverage of an Oregon automobile insurance policy issued by USAA; (2) who received medical, health care, or rehabilitation services, or medication or equipment, from a health care provider; (3) who made a claim under the PIP coverage of that policy; (4) who submitted (or whose health care provider submitted) to USAA a bill for such services or products; and (5) who had that bill reduced or denied by an RF code; or PPO code; or Physician Review, or PR code; or DOC code, or CR code; or GR code; or TR code; (the "Class").

121.    Excluded from the Class are Defendants' officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

122.    The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendants remedy the conduct complained of herein.

123.    **Numerosity**: While the exact numbers of the members of the Class is unknown to Plaintiffs at this time, membership in the Class may be ascertained from the records maintained by Defendants. At this time, Plaintiffs are informed and believe that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in

a single action is impracticable under Rule 23(a)(1) of the Federal Rules of Civil Procedure, and the resolution of their claims through a class action will be of benefit to the parties and the Court.

124.    **Commonality**: The Class's claims arise from a common process and common practices used by Defendants in adjusting and paying PIP claims. The common process includes the use of AIS's MBA process to perform an automated computerized bill review that includes common practices in denying or reducing charges based on certain preset flags, codes, criteria, and limitations, bogus medical reviews, and no adjusting of PIP claims by USAA adjusters. Among these common practices are denials and reductions that are based on certain reason codes that appear on the EOR(s) sent to the insured and providers. The common questions of fact and law include:

i.      Whether USAA entered into agreements to provide PIP coverage and therein gave itself discretion to pay its Oregon insureds any amount it wanted?

ii.     Whether Defendants conspired to commit fraudulent misrepresentation and concealment.

iii.    Whether Defendants aided and assisted to commit fraudulent misrepresentation and concealment.

iv.     Whether USAA improperly delegates its duty to conduct an independent evaluation and adjustment of claims to AIS, without USAA conducting any adjusting of PIP claims.

v.      Whether Defendants arbitrarily reduce PIP benefits through the improper use of PPO codes.

vi.     Whether Defendants arbitrarily reduce PIP benefits through the improper use of RF codes.

CLASS ACTION COMPLAINT            - 30 -

vii.     Whether Defendants arbitrarily deny PIP benefits through the improper use of PR codes and bogus physician reviews.

viii.     Whether Defendants arbitrarily deny PIP benefits through the improper use of DOC codes.

ix.     Whether Defendants arbitrarily deny PIP benefits through the improper use of GR codes.

x.     Whether Defendants arbitrarily deny PIP benefits through the improper use of TR codes.

xi.     Whether Defendants arbitrarily deny PIP benefits through the improper use of CR codes.

xii.     Whether Defendants' complained of practices violate USAA's insurance contracts with its Oregon insureds.

xiii.     Whether Defendants' denials and reductions of PIP claims are based on its use of AIS's MBA process which uses an arbitrary automated, computer-generated review.

xiv.     Whether USAA has a practice of relying solely on AIS to make denials and reductions of PIP claims without conducting its own independent investigation or individualized investigation based on all "available" information including, for example, the severity of the accident, the age and preexisting condition of the patient, the provider's background, years of experience, credentials or other individual attributes.

125.     **Typicality**: The claims of Plaintiffs arise from the same common practices used by Defendants to process the claims of the members of the Class. In each instance, USAA used AIS's MBA process to perform an automated, computer-generated bill review that resulted in improper

denials or reductions in payment of charges submitted pursuant to PIP claims. The same criteria applied by AIS in processing the charges submitted by the Plaintiffs on their PIP claims were applied to the charges submitted by all Class members. Plaintiffs' claims are based upon the same factual and legal theories as those of the Class. All Class members will benefit by the action brought by Plaintiffs by obtaining relief in the manner described below, including, but not limited to, damages and/or declaratory and injunctive relief.

126.    **Adequacy of Representation**: Plaintiffs are USAA insureds who had payment of charges submitted on PIP claims denied or reduced because of Defendants' improper practices described above. Plaintiffs have the same interest as members of the Class in ensuring that USAA does not use improper processes and practices to deny or reduce PIP claims. Plaintiffs have no conflicts with the interests of the Class. Plaintiffs have retained competent counsel with experience litigating consumer class actions, as well as breach of contract, and other insurance claims. Plaintiffs and their chosen counsel will fairly and adequately protect the interests of the Class.

127.    **Predominance**: Common questions predominate because Defendants undertook a common course of conduct towards all members of the Class and applied its practices at issue to all bills submitted under its PIP coverage during the class period.

128.    **Superiority**: Class certification is proper where a class action is a superior method for adjudicating the claims of thousands of Class members located in Oregon that raise identical factual and legal issues concerning Defendants' PIP processing and payment practices scheme. Class certification is a superior method of adjudicating the claims alleged herein where it is desirable to concentrate the litigation and claims in a single forum to avoid duplicity of actions and inconsistent adjudications of identical claims.

CLASS ACTION COMPLAINT                          - 32 -

129.    Class certification is a superior method of adjudicating the claims alleged herein where the individual Class members have little interest in or time to individually controlling the prosecution of their claims.

130.    Class certification is a superior method of adjudicating the claims alleged herein where it is desirable to concentrate the litigation and claims in a single forum to avoid duplicity of actions and inconsistent adjudications of identical claims. The cost to the court system of the various counties where Class members are located would be substantial if the claims were adjudicated individually.

131.    Class certification is a superior method of adjudicating the claims alleged herein because there are few difficulties likely to be encountered in the adjudication of the Class members' claims.

### FIRST CLAIM FOR RELIEF
**Breach of Contract**
**Against USAA-GIC**
**(On Behalf of Plaintiffs and the Class)**

132.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

133.    Plaintiffs and other Class members entered into written insurance contracts with USAA-GIC that provided for PIP benefits.

134.    Pursuant to the contracts, in exchange for insureds' premium payments, USAA-GIC agreed to pay them, in accordance with the contracts, their PIP claims for the medical treatment they received from medical providers, which treatment was medically reasonable or necessary and causally connected to the accidents which caused their respective injuries.

135.    Plaintiffs and Class members have fully performed their obligations under the contracts.

136.    USAA-GIC breached its insurance agreements with Plaintiffs and Class members by, among other things:

a.    Improperly delegating its claims adjustment function to AIS which uses its MBA process to arbitrarily and improperly deny or reduce PIP claims;

b.    Improperly reducing PIP claim payments based an EOR stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA-GIC had not entered into PPO agreements with providers;

c.    Improperly denying PIP claim payments based on an EOR attaching a sham letter purportedly written by a physician (i) engaged by AIS; (ii) who is not licensed in the relevant state; (iii) who does not specialize in the area under review; (iv) who conducts only a paper review; (v) who does not physically examine the patient or speak with the patient; and (vi) who has never spoken with the insureds' provider(s) regarding the reasonableness or necessity for the medical service, stating that the submitted documentation does not substantiate that the treatment provided is medically necessary and/or related to the loss, and without any independent investigation by USAA-GIC;

d.    Improperly reducing PIP claim payments based on RF codes whenever an automated review process, conducted by AIS pursuant to its contract with USAA-GIC, indicates that the charge for a particular procedure exceeds a certain arbitrary threshold established in the Milliman Database;

e.    Improperly denying full payment of PIP claims based on DOC codes whereby USAA-GIC directs AIS to program its computer to automatically deny payment

CLASS ACTION COMPLAINT                - 34 -

of medical bills covered under PIP claims if certain documents are not attached to the bills, even though the documentation is not needed to substantiate the necessity of the billed treatments, and without USAA-GIC conducting any independent investigation, but instead relying only on AIS's arbitrary automated MBA process; and

   f.  Improperly denying payment of PIP claims based on CR codes, TR codes and GR codes, without USAA-GIC conducting an independent investigation.

137. USAA-GIC's breach of the contracts wrongfully denied or reduced Plaintiffs' and the Class members' PIP claims, causing them damages.

**SECOND CLAIM FOR RELIEF**
**Breach of the Covenant of Good Faith and Fair Dealing**
**Against USAA-GIC**
**(On Behalf of Plaintiffs and the Class)**

138. Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

139. Pursuant to the contracts, in exchange for Oregon insureds' premium payments, USAA-GIC implied and covenanted that it would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of first-party PIP benefits.

140. USAA-GIC breached the contracts by utilizing a system designed to reject claims without a reasonable investigation based upon all available information, and thus wrongfully reducing or denying PIP claims, causing Plaintiffs and the Class members damages.

141. Class members have fully performed their obligations under the contracts.

142. Plaintiffs and members of the Class have sustained damages as a result of USAA-GIC's breach of the covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
**Declaratory Relief**
**Against USAA-GIC**
**(On Behalf of Plaintiffs and the Class)**

143.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every

allegation contained above as though the same were fully set forth herein.

144.    Under ORS § 746.230, an insurer may not commit or perform any of the following

unfair claim settlement practices:

> (a) Misrepresenting facts or policy provisions in settling claims; …
>
> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims;
>
> (d) Refusing to pay claims without conducting a reasonable investigation based on all available information; …
>
> (f) Not attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear;
>
> (g) Compelling claimants to initiate litigation to recover amounts due by offering substantially less than amounts ultimately recovered in actions brought by such claimants

145.    Under ORS §746.075, a person may not engage, directly or indirectly, in the

following in connection with the offer or sale of any insurance:

> (a) Making, issuing, circulating or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages therein or the dividends or share of surplus to be received thereon; …
>
> (g) Engaging in any other transaction, practice or course of business that operates as a fraud or deceit upon the purchaser, insured or person with policy ownership rights; or
>
> (h) Materially misrepresenting the provider network of an insurer offering managed health insurance or preferred provider organization insurance as defined in ORS 743B.001 (Definitions), including its composition and the availability of its providers to enrollees in the plan.

146.    There exists a present controversy between the parties as to whether USAA-GIC's

use of AIS's MBA process using PR codes and sham medical reviews; RF codes; PPO codes;

DOC codes; GR codes; CR codes; and TR codes to deny or reduce benefits owed to USAA-GIC violates Oregon's insurance law, including statutory and regulatory requirements regarding insurance claims handling pursuant to ORS § 746.230 and ORS §746.075.

147.    Plaintiffs and the members of the Class contend that USAA-GIC's use of AIS and its MBA process to wrongfully and arbitrarily deny or reduce USAA-GIC's insureds' PIP claims violates Oregon insurance law, including ORS § 746.230 and ORS §746.075.

148.    Accordingly, Plaintiffs and the members of the Class request the Court to issue an order declaring that USAA-GIC's use of AIS and its MBA process to wrongfully and arbitrarily deny or reduce USAA-GIC's insureds' PIP claims using PR codes and sham medical reviews; RF codes; PPO codes; DOC codes; GR codes; CR codes; and TR codes violates Oregon insurance law, including ORS § 746.230 and ORS §746.075.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**Fraudulent Misrepresentation and Concealment**
**Against USAA-GIC**
**(On Behalf of All Plaintiffs and the Class)**

149.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

150.    USAA-GIC, either directly and/or through agents, made material misrepresentations and concealed material information, (*e.g.*, that it would pay in accordance with its PIP policies), when it knew it had a fraudulent cost containment scheme in place that was designed to enrich USAA-GIC and AIS to the detriment of its insureds. USAA-GIC intended to deceive Plaintiffs and the putative class, and also made such representations knowingly.

151.    Moreover, USAA-GIC concealed from its insureds that it would rely on AIS's MBA process to arbitrarily and unlawfully reduce and deny their PIP claims using sham codes. USAA-GIC concealed from its insureds that it would subject its insureds PIP claims to AIS's MBA process's algorithms intentionally designed to deny and reduce claim reimbursement. Moreover,

USAA-GIC also concealed from its insureds that it would use arbitrary benchmarks to determine what costs for medical care were "reasonable."

152.    USAA-GIC failed to disclose to its insureds under its PIP policies that USAA-GIC had implemented a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of PIP benefits. In furtherance of its scheme to deny or reduce the payment of PIP benefits, USAA contracted with AIS, a third-party, to reduce or deny reimbursement of USAA-GIC's insureds' PIP benefits using its MBA process. The MBA process is designed to categorically eliminate or reduce the amount USAA-GIC pays for its insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, and RF codes.

153.    USAA-GIC had a duty to disclose its multifaceted, improper, and unconscionable scheme to deny and reduce the payment of PIP benefits because USAA-GIC affirmatively represented to its insureds in its PIP policies that it would pay provider fees in accordance with the PIP policies.

154.    Specifically, in its PIP policies, USAA-GIC represented that it would pay its Oregon insureds' covered PIP benefits as follows:

a. "[t]he amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement";

b. "[t]he amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area";

c. "[t]he amount negotiated with the provider; or

d. the lesser of "[t]he actual amount billed" or "[a] reasonable fee for the service provided."

155.    USAA-GIC intentionally concealed and omitted material information regarding the payments it would make under its insureds' PIP policies. The foregoing multifaceted scheme, which USAA-GIC failed to disclose to its insureds at the time they entered into the PIP policies, is directly contrary to USAA-GIC's representations in the PIP policies regarding the payment of provider fees in connection with USAA-GIC's insureds' PIP claims.

156.    At the times USAA-GIC misrepresented and concealed these material facts, Plaintiffs and the members of the Class had no knowledge of the material facts that USAA-GIC misrepresented and failed to disclose.

157.    At all times relevant, USAA-GIC had superior knowledge regarding the misrepresentations and omissions alleged *supra* than did Plaintiffs and Class members. USAA-GIC knowingly sold PIP policies to Plaintiffs and the putative class and sought to conceal its multifaceted, improper, and unconscionable scheme to deny and reduce the payment of PIP benefit from consumers who purchased PIP from USAA-GIC in reliance upon the fraudulent statements made by USAA-GIC.

158.    By misrepresenting and failing to disclose material facts, USAA-GIC intended that the Plaintiffs and Class members would rely upon such failures to disclose material facts. USAA-GIC owed a duty to Plaintiffs and Class members to disclose material facts related to the purchase of PIP.

159.    Plaintiffs and all Class members did, in fact, rely upon USAA-GIC's failure to disclose all material facts and, as a consequence, purchased PIP from USAA-GIC. Plaintiffs and Class members relied to their detriment on USAA-GIC's omissions of material facts and upon representations delivered through USAA-GIC's PIP insurance policies.

160.    Had Plaintiffs and the putative class been aware of USAA-GIC's multifaceted scheme to deny or reduce their PIP benefits, they would not have paid premiums to USAA-GIC to obtain the PIP policies from USAA-GIC.

161.    As a direct and proximate result of USAA-GIC's deceptive, fraudulent, and unfair practices, Plaintiffs and Class members have suffered injury in fact and/or actual damages. Specifically, Plaintiffs and the putative class had their PIP benefits improperly reduced or denied by USAA-GIC's multifaceted scheme.

## FIFTH CLAIM FOR RELIEF
### Civil Conspiracy to Commit Fraudulent Misrepresentation and Concealment
### Against All Defendants
### (On Behalf of All Plaintiffs and the Class)

162.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

163.    Defendants engaged in a conspiracy to commit fraudulent misrepresentation and concealment, as alleged in Count 4, *supra*, by implementing a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of PIP benefits. In furtherance of its scheme to deny and reduce the payment of PIP benefits, USAA-Association contracted with AIS, a third-party, to reduce and deny reimbursement of USAA insureds' PIP benefits using its MBA process. The MBA process is designed to categorically eliminate or reduce the amount USAA pays for their insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, CR codes, GR, codes TR codes and RF codes.

164.    The conspiracy was fully formed and involved USAA-Association, USAA-GIC, USAA-GIC, Garrison, and AIS. Each Defendant individually was part of the conspiracy and all Defendants agreed as to the purpose of the conspiracy, which was to implement a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of PIP benefits. The improper reductions and denials USAA insureds' PIP benefits in furtherance of this conspiracy were done pursuant to the contract between USAA-Association, on behalf of itself and USAA-CIC, USAA-GIC, and Garrison on the one hand, and AIS on the other, which sets forth how Defendants reduce and deny these benefits.

165.    Each Defendant was aware of the other Defendants' roles in the conspiracy.

166.    Each Defendant agreed among themselves and intended that the fraudulent misrepresentation and concealment was perpetrated on Plaintiff and USAA insureds who comprise the putative class members.

167.    Each Defendant had contracts and/or on-going cooperative relationships with at least one of the other co-conspirators responsible for the harm suffered by Plaintiffs and putative class members.

168.    Significant wrongful conduct was committed in furtherance of the conspiracy, including the making of material fraudulent misrepresentations, and omitting material information that induced Plaintiffs to pay insurance premiums for PIP policies, namely concealing its multifaceted scheme designed and implemented to avoid paying its insureds their PIP benefits in accordance with USAA's representations made in its PIP policies.

169.    Each Defendant committed at least one overt act in furtherance of the conspiracy. These acts in furtherance of the conspiracy included, among others:

a.    Defendant USAA-Association, on behalf of itself and its subsidiaries USAA-GIC, USAA-GIC and Garrison, made an overt act in furtherance of the conspiracy by contracting with AIS for the express purpose of exercising the conspiracy.

b.    Defendants also made substantial overt acts in furtherance of the conspiracy by using, as more fully detailed in the general allegations *supra*, AIS's MBA System to arbitrarily and unlawfully reduce and deny USAA insureds' PIP claims using, *inter alia*, the following codes:

i.    Defendants reduced PIP claim payments based on EORs, sent by AIS to USAA insureds, containing PPO codes stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA had not entered into direct PPO agreements with providers;

ii.    Defendants denied PIP claim payments based on PR codes contained in EORs, sent by AIS to USAA insureds, attaching a letter written by a physician (i) engaged by AIS; (ii) who conducts only a paper review; (iii) who does not physically examine the patient or speak with the patient; and (iv) who has never spoken with the insureds' provider

CLASS ACTION COMPLAINT                - 41 -

regarding the reasonableness or necessity for the medical service, stating that the submitted documentation does not substantiate that the treatment provided is medically necessary and/or related to the loss, and without any independent investigation by USAA;

iii.   Defendants reduced full payment of PIP claims in EORs, sent by AIS to USAA insureds, containing RF codes which arbitrarily reduce provider charges using a database containing unrelated Medicare charges associated with CPTs; and

iv.   Defendants denied full payment of PIP claims in EORs, sent by AIS to USAA insureds, containing DOC codes which request unnecessary provider documents relating to treatment.

170.   As a direct and proximate result of Defendants' conspiracy and the Defendants acts in furtherance of the conspiracy, as detailed *supra*, Plaintiffs and the putative class members have suffered damages.

## SIXTH CLAIM FOR RELIEF
**Aiding and Assisting to Commit Fraudulent Misrepresentation and Concealment
Against All Defendants
(On Behalf of All Plaintiffs and the Class)**

171.   Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

172.   Defendants aided and assisted in the commission of fraudulent misrepresentation and concealment, as alleged in Count 4, *supra*, by implementing a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of PIP benefits. In furtherance of its scheme to deny and reduce the payment of PIP benefits, USAA-Association contracted, on behalf of itself and USAA-GIC, USAA-CIC, and Garrison, with AIS, a third-party, to reduce and deny reimbursement of USAA insureds' PIP benefits using AIS's MBA process. AIS's MBA process is designed to categorically eliminate or reduce the amount USAA pays for their insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, CR codes, GR codes, TR codes and RF codes.

173.    All Defendants either intended that the fraudulent misrepresentation and concealment be committed, or at least understood that the fraudulent misrepresentation and concealment was being or would be committed when it aided the other Defendants.

174.    As a direct and proximate result of Defendants' aiding and assisting, as detailed *supra*, Plaintiffs and the putative class members have suffered damages.

## VI.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court enter an order granting the following relief against Defendants:

    a.  Awarding actual damages, statutory damages, exemplary/punitive damages, costs and attorneys' fees;

    b.  Awarding disgorgement and/or restitution;

    c.  Awarding pre-judgment interest to the extent permitted by law;

    d.  Appropriate declaratory relief as requested in the Third Claim for Relief;

    e.  Injunctive relief enjoining Defendants from continuing its improper and unlawful claims handling practices as set forth herein;

    f.  Grant leave to amend these pleadings to conform to evidence produced at trial; and

    g.  Such other and further relief as the Court may deem just and proper.

## VII.    <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all claims in this Complaint so triable.

//

//

DATED: May 9, 2024                    **TOUSLEY BRAIN STEPHENS PLLC**

*/s/Chase C. Alvord*
Chase C. Alvord, OSB #070590
Jason T. Dennett (*pro hac vice* anticipated)
Cecily C. Jordan (*pro hac vice* anticipated)
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Telephone: 206-682-5600
Facsimile: 206-682-2992
calvord@tousley.com
jdennett@tousley.com
cjordan@tousley.com

**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
FRANKLIN D. AZAR
MICHAEL D. MURPHY
KEVIN J. DOLLEY
TIMOTHY L. FOSTER
BRIAN HANLIN
MARGEAUX R. AZAR

*Attorneys for Plaintiffs and the Proposed Class*